UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| Telemetrix, Inc., | ) | Case No. 08-30077 ABC |
| EIN: 59-3453156 | ) | Chapter 11 |
| | ) | |
| _____ | ) | |
| | ) | |
| Convey Communications, Inc. | ) | Case No. 08-30081 ABC |
| EIN 47-0640255 | ) | |
| | ) | |
| _____ | ) | Jointly Administered , Case No. 08-30077 ABC |

_____

**UNITED STATES TRUSTEE'S MOTION TO DISMISS
CHAPTER 11 CASES UNDER 11 U.S.C. §1112(b) OR, APPOINT A CHAPTER 11
TRUSTEE UNDER 11 U.S.C.§1104**
_____

The United States Trustee ("UST"), by and through his counsel, moves the Court to dismiss the above-captioned Chapter 11 cases under 11 U.S.C. § 1112(b), Or Appoint A Chapter 11 Trustee Under 11 U.S.C. §1104, and as grounds therefor states and alleges as follows:

**Background**

1. Debtors filed their bankruptcy petitions on December 16, 2008.

2. Telemetrix, Inc., a publicly held Delaware corporation, owns 100% of the stock of Convey Communications Inc.

3. The Debtors own FCC licenses, patents, towers, antennas, and network switchs with unknown values. They operate as a wireless mobile telecommunications service provider and network operator.

4. The Debtors' President, Mitchell Bennett and Accountant, Chris Claypool appeared and testified at the meeting of creditors held on January 20, 2009.

5. Telemetrix Schedule A, and B reports assets, in the amount of $1,713, 377, which includes as "unknown" the value of the Debtor's primary assets, that being the Tower Sites, and the Patents.  Ms. Claypool testified that these assets had never been appraised. Telementrix lists secured claims on Schedule D in the amount of $3,481,086.26, including claims to  Becker Capital Management in the amount of $2,779,352.00. Convey Communication's Schedule A and B report assets in the amount of $838,000,

        which includes Towers and the FCC licenses, which are reported at cost. Convey's Schedule D reports secured claims in the amount of $3,481,086.26, including claims to Becker Capital Management in the amount of $2,779,352.00

6. Ms. Claypool testified that the Debtors accounting for all purposes is consolidated and that they have suffered a 2 million loss in 2007; and during 2008 the Debtors operated at a monthly deficit of between $100,000 to $120,000, on monthly revenue of approximately $10,000. Further, that the total losses for 2008 would exceed 1.2 million dollars.

7. Both pre-petition and post-petition, the Debtors have been paying expenses from a pre-petition loan from Becker Capital Management advanced to a Convey Communications bank account and then transferred to the Telemetrix account.. At the time of the meeting of creditors, the Debtors had approximately $160,000.00 in loan proceeds.

8. The Debtors' Budget for the period of December 2008 through October 2009 lists monthly revenues of $9,000 and recurring monthly cash requirements of $102,132 plus recurring non-monthly cash requirements of varying amounts, and are estimated to lose at least $100,000.00 a month.

9. Mr. Bennett testified that since September of 2008, he had been talking to the Board of Directors, and has been looking for financing. His attempts have included talking to existing shareholders and creditors in an attempt to raise additional funds for the Debtors.

10. The Debtors have been and continue to be controlled by the actions of insiders:

    William Becker:    The Debtors' Statement of Financial Affairs, Statements & Schedules were signed and certified by William Becker, as CEO. Mr. Becker, a resident of the British West Indies, since 1999, has been Chairmen of the Board of Directors, exclusive of a 5 month period in 2004. At all times, he has been the Chief Executive Officer. As of March 2008, his beneficial ownership of common stock was 11.8%.

    Larry Becker:  Larry Becker, son of William Becker, has been involved in the Debtors, since at least 2005. He has also been the manager of daily operations which has included fund raising activities of Telemetrix, and a Director since 2005. He resigned from the Board of Directors in December 2008, just prior to the filing of the bankruptcy. As of March 2008 his beneficial ownership is 11.8%.

        Larry Becker, manages and oversees the operations of Becker Capital Management, his wholly owned Limited Liability company. Mr. Becker is also involved in LB Becker Consulting. Further, Mr. Becker owns the building from which the Debtor leases it's space and operates his entities from this location in Boulder.

11. On December 30, 2008, the Debtor filed it's Motion to Approve Cash Collateral Agreement , Nunc Pro Tunc December 16, 2008.  The proposed Agreement for the use of Cash Collateral ( "Agreement") was entered into between Becker Capital Management LLC and the Debtors.  The UST objected asserting, among other issues, that the Court should hold a hearing to evaluate whether the Agreement was truly negotiated as an arms length transaction and is in the bests interest of the estates. Mr. Bennett testified that he did not negotiate this Agreement, that it was negotiated by the Board of Directors.  At that time, both William Becker and Larry Becker were Directors.  Mr. Becker subsequently resigned before the filing of the Bankruptcy petition.  The Debtor has not proceeded with this Agreement.

12. On January 26, 2009, Becker Capital Management filed a Motion for Relief from Stay. The Debtors' Response has admitted that the value of their assets is not greater than their secured debt and that without additional funding their operations can  not be continued.

13. On February 3, 2009,  the Debtors filed a Joint Motion to Approve Debtor-in-Possession Post Petition Financing requesting Court approval of the approximately $400,000 that has been loaned to the Debtor pre and post petition by Becker Capital Management. Objections to this Motion are due February 23, 2009.

## Cause Exists Under 11 U.S.C. §1112

14. Relevant to the facts of this case, §1112 provides that ..
.   (b)(1) Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, if the movant establishes cause .....

    (4) For the purposes of this subsection, the term "cause" includes-
     (A) substantial and continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;...

15. "Cause"under §1112 is a flexible concept.  *In re Pacific Rim Investments, LLP*,  243 B.R. 768, 772 ( D. Colo. 2000) .  The changes to the §1112 under the Bankruptcy Abuse Prevention Act ("BAPCPA) did not change the fact that the list is illustrative, not exhaustive. *In re TCR of Denver,LLC* 338 B.R. 494, 500 ( Bankr. D.Colo .2006).

16. As reflected by the Debtors own statements, the Debtors are losing, at a minimum $100,000 a month. Further, they have been unable since September of 2008 to raise financing. The UST asserts that it is unlikely that they will do so in the near future.

## CAUSE EXISTS TO APPOINT A TRUSTEE

17. Section 1104(a) authorizes a court to appoint a trustee at any time after the commencement of a case:

    ..."(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement ... or similar cause...;
    (2) if such appointment is in the interests of the creditors,...;
    (3) if grounds exist to convert or dismiss the case under section 1112, but the court determines that the appointment of a trustee or an examiner is in the best interests of the creditors and the estate...

18. The list of enumerated causes is not exhaustive and a court may consider whatever relevant factual circumstances exist. *In re Colorado-Ute Ass'n Inc*. 120 B.R. 164, 174 (Bankr. D.Colo. 1990)

19. In determining whether a trustee would be in the best interests of the creditors, courts have considered the following factors, among others:

    (1) the trustworthiness of the debtor;
    (2) the debtor's past and present performance and future prospects;
    (3) the confidence or lack thereof of the debtor's creditors;
    (4) the potential benefits of a trustee balanced against the cost thereof; and
    (5) the ability of the debtor to act as a fiduciary for the estate.

    *In re Colorado-Ute Electric*, 120 B.R. at 176

20. Cause exist pursuant to 11 U.S.C. §1104(a) as follows:

    A. As demonstrated above, there is cause for concern by the role the Becker family has played in these proceedings, their conflicts in negotiating the Cash Collateral Agreement and the ability of current management to operate independent and as fiduciaries.

WHEREFORE, the UST respectfully requests that the Court enter an order dismissing the above-captioned Chapter 11 cases for cause under 11 U.S.C. § 1112(b)(4) and for such other and further relief as the Court deems appropriate.

Dated: February 18, 2009

Respectfully submitted,

CHARLES F. McVAY
UNITED STATES TRUSTEE

/s/ Joanne C. Speirs
By: Joanne C. Speirs, 13021
Trial Attorney
999 18th Street, Suite 1551
Denver, CO 80202
(303) 312-7252
(303) 312-7259 fax
Joanne.Speirs@usdoj.gov

## Certificate of mailing

     The undersigned certifies that on February 18, 2009 a true and accurate copy of the United States Trustee's Motion to Dismiss in the above-captioned case, a notice in substantial compliance with G.P.O. 2007-1, and a proposed order was served on all creditors and other parties in interest, as reflected on the attached printout of the mailing matrix in this case as printed out on February 18, 2009 in accordance with applicable rules either before or at the time of the filing of the motion by placing a true and accurate copy of the motion, notice, and proposed order in the United States Mail, postage prepaid.

Nicole Zollars
Legal Clerk
Office of U.S. Trustee